IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

NICOLE M. M.,

                         Plaintiff,

              v.                          Civil Action No.
                                          5:22-CV-0634 (GLS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

───────────────────────────────

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP               DANIEL BRADY, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          JASON P. PECK, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance benefits ("DIB") for which she has applied. The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in May of 1977, and is currently forty-six years of age. She was thirty-nine years old on December 5, 2016, the date when she allegedly became disabled, and forty-five years old as of December 31, 2022, the date she was last insured for benefits under Title II ("DLI"). Plaintiff measures five feet and three inches in height, and weighed approximately two hundred and twenty-five pounds during the relevant period. Earlier in the relevant period, plaintiff lived in a house in Munnsville, New York, with her husband and one of her children. By the time of the most recent administrative hearing, held in February of 2021, however, she was living in an apartment in Canastota, New York, following a separation

from her husband.

Plaintiff reports that she did not graduate from high school, but she did subsequently obtain her GED.  She worked most relevantly as a bus driver for a school district, for which job she held a commercial driver's license ("CDL").  Plaintiff worked most recently during the relevant period as an associate at a warehouse store.

Plaintiff alleges that she suffers primarily from depression and anxiety that prevent her from doing much of anything on a consistent basis.  She also reports that she suffers from pain in her knees that impacts her ability to sit or stand for long periods of time, migraines, and gastrointestinal issues that cause her to require access to a bathroom after eating.  As is relevant to her application for benefits, plaintiff treated for her impairments with psychologist Dr. M. Marlene Ryan, as well as sources at Community Memorial Hospital Family Health Center and Oneida Healthcare.  Plaintiff also underwent a lengthy psychiatric evaluation with psychiatrist Dr. James Knoll on April 25, 2017, to determine her fitness to continue to work as a school bus driver.

At the initial administrative hearing related to her application for benefits, held in August of 2018, plaintiff testified that, regarding her

relevant mental impairments,[1] she became depressed in 2016 following the

death of her friend and having been forced to leave her job as a bus driver.

She alleged that she has a tendency to shut down, that she cries often, and

that she experiences anxiety and panic attacks related to negative things

that might happen, such that she no longer feels comfortable leaving her

house.  Plaintiff reported that she showers only once each week, eats

inconsistently, cleans dishes only sporadically such that dirty dishes tend to

accumulate, and that she does not like grocery shopping, although she will

force herself to do it.  While married, her husband did the laundry.  Plaintiff

stated that she does not like to be around people or to leave the house,

although she admitted to volunteering at the bar of the local American

Legion once per week and going to a casino with her friend weekly.

At the second hearing, held in February of 2021, plaintiff reported that

she continues to experience difficulties related to her mental impairments.

Specifically, she alleged that she has difficulty sleeping or eating without

reminders or medication, that she does not like to leave home because she

is anxious about what might happen, and that she will cry, hit things,

---

[1]    Although plaintiff alleges that she suffers from various physical impairments, as
was noted above, there has been no challenge to the ALJ's findings relating to such
physical impairments.  Discussion of her reports regarding her physical impairments has
therefore been omitted here.

scream, yell, or cut herself when she is experiencing stress.  Her husband

left her because of her behavior.  Plaintiff further testified, however, that

she was able to stop drinking alcohol and has been working at a

warehouse store, but qualified that she has episodes of crying and panic

attacks sometimes while working and that she has been written up at that

job for missing work, although her employer will not fire her because there

are not enough other employees.  Plaintiff testified that doing daily activities

is difficult because she does not want to get out of bed, and because she

has difficulty sleeping, which makes her tired during the day.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security

Act on May 26, 2017, alleging disability due to major depression, social

anxiety, and an unspecified personality disorder.  Administrative Law Judge

("ALJ") Gretchen Mary Greisler held an administrative hearing to address

plaintiff's application for benefits on August 15, 2018, following which she

issued a decision on October 12, 2018, finding that plaintiff was not

disabled, and therefore not entitled to the benefits for which she had

applied.  On October 31, 2019, the Social Security Appeals Council

("Appeals Council") denied plaintiff's request for review of the decision,

making that decision the final determination of the Commissioner.

Plaintiff sought review of the ALJ's decision from this court, and, on July 20, 2020, United States Magistrate Judge Therese Wiley Dancks ordered that the matter be remanded for further consideration based on a stipulation entered into by the parties. The Appeals Council effectuated that remand to the ALJ on August 13, 2020, pursuant to this court's order and judgment.[2] ALJ Greisler conducted additional hearings on February 11, 2021, and November 10, 2021, during which she heard testimony from medical expert Dr. Gerald Koocher and a vocational expert. On April 13, 2022, ALJ Greisler issued an unfavorable decision again, finding that plaintiff was not disabled during the relevant period. Plaintiff therefore commenced this proceeding, bypassing the Appeals Council, in accordance with 20 C.F.R. § 404.984(d).

B.    The ALJ's Decision

In her most recent decision, ALJ Greisler applied the familiar, five-step sequential test for determining disability. At step one, she found that, although plaintiff did engage in substantial gainful activity for portions of the relevant period between December 5, 2016, and December 31, 2022,

---

[2]    The principal reason for the remand centered upon the failure of ALJ Greisler to apply the amended rules for evaluating medical evidence and prior administrative medical findings.

particularly from October of 2019 onward, there have been sufficient spans of time in which she was not engaged in substantial gainful activity to allow for the ALJ to continue with the sequential analysis.  ALJ Greisler next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including dumping syndrome, irritable bowel syndrome ("IBS"), obesity, major depressive disorder, a personality disorder, a social anxiety disorder, and posttraumatic stress disorder ("PTSD").  As part of her step two finding, ALJ Greisler also found that plaintiff's alleged restless leg syndrome, costochondritis, migraines, and polysubstance abuse do not constitute severe impairments, while her alleged carpal tunnel syndrome has not been established as a medically determinable impairment during the relevant period.

At step three, ALJ Greisler examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 5.06, 12.04, 12.06, 12.08, and 12.15, as well as Social Security Ruling ("SSR")19-2p, related to obesity.

7

ALJ Greisler next surveyed the available record evidence and

determined that plaintiff retains the residual functional capacity ("RFC") to

perform a range of work at the light exertional level, as defined by the

controlling regulations, with the following exceptions:

> she cannot climb ladders, ropes or scaffolds, or work
> at unprotected heights or in close proximity to
> dangerous machinery. The claimant requires ready
> access to a restroom, but the need to use the
> restroom can be accommodated by normal morning,
> lunch, and afternoon breaks. Mentally, the claimant
> can perform simple, routine, and repetitive tasks at a
> consistent pace, but not at a fast, production-rate
> pace, such as would be experienced in assembly line
> type work. She can also perform work that does not
> require more than occasional interaction with
> supervisors and coworkers, or more than incidental
> contact with the public. Although the claimant can
> work in proximity with others, the tasks performed
> should not require working in conjunction with others
> and should predominantly involve working with
> objects rather than people. The claimant can also
> make decisions directly related to her work and
> tolerate occasional, minor changes.

ALJ Greisler went on to step four and found that plaintiff is unable to

perform any of her past relevant work. The ALJ then proceeded to step five

and, after eliciting testimony from a vocational expert, found that plaintiff

remains able to perform available work in the national economy, citing the

representative positions of marker, router, and mail clerk.  Based upon

these findings, ALJ Greisler determined that plaintiff was not disabled at

8

the relevant times.

C.    This Action

Plaintiff commenced this action on June 14, 2022.[3]  In support of her

challenge to the ALJ's determination, plaintiff argues that the ALJ failed to

properly evaluate the opinions provided by treating psychologist Dr. Ryan

and testifying medical expert Dr. Koocher.  Dkt. No. 12.

Oral argument was conducted in this matter, by telephone, on July

19, 2023, at which time decision was reserved.

III.   DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

---

[3]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

1998).  Where there is reasonable doubt as to whether an ALJ has applied

the proper legal standards, the decision should not be affirmed even

though the ultimate conclusion reached is arguably supported by

substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If, however, the correct legal standards have been applied, and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision will withstand judicial scrutiny regardless of

whether the reviewing court might have reached a contrary result if acting

as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.*

*Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must

be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.     Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether

the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work. *Perez*, 77 F.3d at 46. In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills. *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C. Analysis

Plaintiff's challenge in this proceeding to the ALJ's finding of no

disability centers upon her conclusion that the opinions in the record

regarding plaintiff's mental functioning provided by Dr. Ryan and Dr.

Koocher are not persuasive. Administrative Transcript ("AT") at 628-31.[4]

Because plaintiff's application was filed after March 27, 2017, this case is

subject to the amended regulations regarding opinion evidence. Under

those regulations, the Commissioner "will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s), .

. . including those from your medical sources," but rather will consider

whether those opinions are persuasive by primarily considering whether the

---

[4]     The administrative transcript is found at Dkt. No. 9, and will be referred to
throughout this decision as "AT ___."

opinions are supported by and consistent with the record in the case.  20

C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at

*5853 (stating that, in enacting the new regulations, the agency was

explicitly "not retaining the treating source rule").  An ALJ must articulate in

his or her determination as to how persuasive he or she finds all of the

medical opinions and explain how he or she considered the supportability[5]

and consistency[6] of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ

also may – but is not required to – explain how he or she considered the

other relevant enumerated factors related to the source's relationship with

the claimant, including the length of any treatment relationship, the

frequency of examinations by the source and the purpose and extent of the

treatment relationship, whether the source had an examining relationship

with the claimant, whether the source specializes in an area of care, and

any other factors that are relevant to the persuasiveness of that source's

---

[5]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[6]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

opinion.  20 C.F.R. § 416.920c(c).

      1.   <u>Dr. Ryan</u>

Dr. Ryan, a psychologist who treated the plaintiff, provided multiple opinions regarding her mental functioning.  In the first of those, dated March 30, 2018, Dr. Ryan reported that plaintiff has a guarded prognosis and experiences various mental symptoms, including anhedonia, appetite disturbance, decreased energy, thoughts of suicide, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, somatization, recurrent or intrusive recollections of a traumatic experience, pathological dependence, passivity or aggressivity, paranoia or inappropriate suspiciousness, emotional withdrawal or isolation, hyperactivity, emotional lability, manic syndrome, deeply ingrained maladaptive patterns of behavior, persistent disturbance of mood or affect, easy distractibility, sleep disturbance, decreased need for sleep, autonomic hyperactivity, and recurrent severe panic attacks.  AT 327.  Dr. Ryan opined that plaintiff is "unable to meet competitive standards"[7] in the areas of maintaining attention for two-hour segments, completing a normal workday and workweek without interruptions from psychologically based

---

[7]     This term is defined in the relevant form as meaning "your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting."  AT 328.

symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods.  AT 328.  She further opined that plaintiff is "seriously limited but not precluded"[8] in the areas of remembering work-like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, dealing with normal work stress, interacting appropriately with the general public, and maintaining socially appropriate behavior, and that plaintiff is "limited but satisfactory" in the areas of maintaining regular attendance and being punctual within customary tolerances, working in coordination with or proximity to others, making simple work-related decisions, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in a routine work setting, being aware of hazards and taking ordinary precautions, traveling in unfamiliar places, and using public transportation.  AT 328.  Dr. Ryan observed that the level of limitation plaintiff experiences in her ability to get along with coworkers is either "seriously limited by not precluded" or "limited but satisfactory," depending

---

[8]    This term is defined in the form as the "ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances."

on the setting.  *Id.*  Dr. Ryan further predicted that plaintiff would be off-task more than twenty-percent of the workday, and specifically more than fifty percent of the workday, and would likely be absent from work more than four days per month.[9]  AT 329.

A few months later, on July 27, 2018, Dr. Ryan noted that many of the same mental health symptoms persisted.  AT 359.  However, she opined that plaintiff's functioning had improved to some degree, noting that plaintiff would be either "unable to meet competitive standards" or "seriously limited but not precluded" in her ability to accept instructions and respond appropriated to criticism from supervisors, and would be "seriously limited but not precluded" in the areas of completing a normal workday or workweek, performing at a consistent pace, dealing with normal work stress, and traveling in an unfamiliar place.  AT 360.  She further opined that plaintiff is "limited but satisfactory" in the areas of carrying out short and simple instructions, maintaining attention for two-hour segments, sustaining an ordinary routine, working in coordination with others, getting along with coworkers and peers, interacting appropriately with the general public, maintaining socially appropriate behavior, adhering to basic

---

[9]     Next to the absence assessment, Dr. Ryan wrote ">1/2."  AT 329.  It is not clear precisely what this means, although it appears she is indicating that plaintiff would be absent more than half of the days in a given month.

standards of neatness and cleanliness, and using public transportation.  *Id.*

She opined that plaintiff has an unlimited or very good ability in the areas of

remembering work-like procedures, understanding and remembering very

short and simple instructions, maintaining regular attendance and being

punctual, making simple work-related decisions, asking simple questions

and requesting assistance, responding appropriately changes in a routine

work setting, and being aware of normal hazards and taking appropriate

precautions.  *Id.*  Despite these modest limitations, Dr. Ryan predicted that

plaintiff would be off-task more than twenty-percent of the workday and

would be absent more than four days per month, specifying that she

believed plaintiff would be absent more than half of the days of each

month.  AT 361.

Along with this second opinion, Dr. Ryan submitted a report in which

she discussed plaintiff symptoms and difficulties, and concluded that (1)

plaintiff "is overwhelmed, making the tasks of daily life too much for her to

manage," and "will have difficulty finding and maintaining employment

particularly close to home" due to her previous experience with the school

district when she was a bus driver, (2) it is not in plaintiff's "psychological

best interest to continue to live as she has been," and (3) "it would be

justified/understandable should the administrative judge award her SSDI,"

but that she "needs to participate in the world," such that "[s]ome expectations, volunteering, doing community service of some sort, getting some training that could lead to even part time work might well, should [sic] improve her overall functioning." AT 265-67. In a handwritten form appended to that report, Dr. Ryan stated her belief that plaintiff has no limitations in understanding, memory and adaptation, while she is limited to an undescribed extent in sustaining concentration, persistence and social interaction. AT 268-70.

The ALJ found Dr. Ryan's opinions to be unpersuasive, explaining that (1) "some of the opinions expressed in these assessments are unclear . . . , while others do not relate to the ability to work," (2) many of the opined limitations between the March 2018 and July 2018 opinions were inconsistent with one another without any explanation for why the extent of those limitations changed within such a short period of time, and (3) the level of limitation opined in her assessments is not supported by or consistent with plaintiff's treatment history or documented activities that the ALJ discussed in the decision. AT 636-67. In making this finding, the ALJ stated that, although some assessments conducted by Dr. Ryan and other providers documented positive signs and symptoms as the Appeals Council noted in its remand order, *see* AT 718-19, plaintiff was going

through multiple traumatic life events at the time, but later improved such that she was able to start a new relationship, get a new job, and stop receiving specialized mental health treatment. AT 637. The ALJ also found that the opinions are unsupported based on evidence that, throughout the relevant period, plaintiff remained able to perform a wide range of daily activities, including self-care, childcare, household chores, hobbies, and going to casinos and bars with her friend. AT 637.

Further, in addition to the explanation provided within the section of the decision where the ALJ weighed the opinion evidence, the ALJ also explained her choice to not rely on Dr. Ryan's opinions when discussing whether plaintiff's mental conditions meet or equal a listed impairment. AT 627-32. The ALJ observed that Dr. Ryan's opinions are inconsistent with the other opinions in the record, specifically those from consultative examiner Dr. Jeanne Shapiro and state agency psychological consultant Dr. C. Walker, as well as with plaintiff's own various reports regarding her daily activities and ability to work beginning in 2019. *Id.* The ALJ also discussed the positive findings contained within Dr. Ryan's treatment notes in greater detail in this section, pursuant to the Appeals Council's remand order, but found that the evidence overall showed that such findings were primarily the result of situational exacerbation of her depression and

anxiety that was helped with medication.  AT 631.

As to ALJ's finding that Dr. Ryan's opinions are inconsistent in some important respects and seem to reflect that plaintiff's mental functioning improved to some extent between March and July of 2018, I find such conclusions to be reasonable.  As has been discussed above, Dr. Ryan's opinion from March 2018 expresses, on the whole, much greater limitations than that from July 2018, including in many areas in which plaintiff was assessed as being unable to meet competitive standards or seriously limited by not wholly precluded.  AT 328.  Yet, only a few months later, Dr. Ryan opined that plaintiff had primarily very good or limited but satisfactory functioning, with only a few areas still assessed as being seriously limited but not precluded and only a single area even conditionally being found to be in the range of unable to meet competitive standards.  AT 360.  As such, to the extent that the ALJ reasoned that the inconsistency between those opinions undermines the supportability of the limitations they contain, that was a proper factor for the ALJ to consider.  *See Glenn D. v. Saul*, 18-CV-1388, 2020 WL 1187651, at *5 (N.D.N.Y. Mar. 12, 2020) (Kahn, J.) (finding good reasons for affording a treating physician's opinion only partial weight where the ALJ identified both inconsistencies between two opinions from the same source as well as internal inconsistencies within the more recent

of the two opinions); *Cf Kociuba v. Comm'r of Soc. Sec.*, 16-CV-0064, 2017 WL 2210511, at *5 (N.D.N.Y. May 19, 2017) (Suddaby, C.J.) (finding it was not proper for ALJ to rely on inconsistencies between a source's two opinions, noting specifically that "this is not a case where a physician provided multiple opinions over the span of a few months without explanation").

The ALJ further noted apparent inconsistencies between Dr. Ryan's July 2018 opinion that plaintiff had unlimited or very good ability to maintain regular attendance and limited but satisfactory ability to maintain attention for two-hour periods and sustain an ordinary routine without special supervision, and her concurrent notation that plaintiff would be off-task more than twenty-percent of the workday and absent more than half of the month.  AT 637.  The ALJ also noted that, in her report from July of 2018, Dr. Ryan acknowledged that, despite plaintiff's symptoms, she would benefit from "expectations, volunteering, doing community service of some sort, [or] getting some training" in order to "improve her overall functioning," which appears to also be inconstant with portions of Dr. Ryan's concurrent opinions.  AT 628.  Again, such inconsistencies are entirely proper for the ALJ to consider when assessing whether a source's opinion is supported. *Glenn D.*, 2020 WL 1187651, at *5.

22

The ALJ also sufficiently documented her consideration of the relevant factors of consistency and supportability within her decision, including addressing why the various positive findings contained within particularly the treatment records of Dr. Ryan fail to support that psychologist's opinion.  Specifically, in accordance with the Appeals Council's remand order, the ALJ discussed that some treatment records "describe the claimant as crying, highly anxious, volatile, irritable, apathetic, woeful, exceedingly insecure, and exhibiting chronic self-defeating attitudes," as well as that a record dated May 22, 2017, that reveals that plaintiff was observed to be "depressed, angry, frustrated, extremely upset, tearful, and exhibiting poor insight."  AT 631.  The ALJ acknowledged these findings, but noted that the evidence also showed that those observations occurred concurrent with a series of stressful events in her life, including being forced out of her job as a school bus driver, believing that her son was being bullied at school because of her issues with the school district, and, near the beginning of the relevant period, the death of a friend and the eviction of her son.  AT 631, 637.  The ALJ therefore interpreted those positive findings as being related to acute, situational exacerbations of her mental health symptoms, rather than representing an accurate picture of her ongoing mental functioning.  I note, similarly, that plaintiff was on one

occasion observed to be crying and shaking with reports of extreme anxiety

and isolation at home in the context of acute marital difficulties with her

husband.  AT 1123.

The ALJ further alluded to the fact that plaintiff's mental health issues

appear to have been exacerbated by the fact that she did not receive

consistent treatment.  AT 631.  The ALJ noted that, although plaintiff

reported that she has been unable to seek specialized mental health

treatment since 2018 because of losing her health insurance, the record

shows that she continued to be seen by other providers after that time and

did, at various times throughout, have insurance.  AT 631.  The record

appears to document that plaintiff had health insurance from her alleged

onset date through at least October of 2018, then regained health

insurance sometime before April of 2019, and then again reported having

had a period without insurance prior to her next relevant documented

appointment in May of 2020, at which time she reported she had been out

of her medications for "months" due to lack of insurance, although it is not

clear that she lacked insurance over the entire period between May of 2019

and May of 2020.  AT 1123, 1127, 1139.  There is also no evidence that

plaintiff lost her health insurance at any time after May of 2020.  The ALJ's

conclusion that plaintiff did have insurance for various portions of the period

during which she was not receiving any specialized mental health treatment is therefore supported the record.

I further note, to emphasize the ALJ's own point, that providers documented in treatment notes throughout the record that, at various times, plaintiff was not wholly compliant with recommended mental health treatment, even during periods when she had insurance. AT 1124 (record dated October 18, 2018, stating that plaintiff needs to see a psychiatrist but she did not attend the appointment that had been scheduled for her, although she was taking her medications); 1145-47 (record from June 19, 2020, stating that plaintiff had been refusing to attend counseling for either depression or drug use, but finally agreed to do so by the end of the appointment). The ALJ's conclusions are further supported by the fact that, despite Dr. Knoll's recommendations that plaintiff engage in dialectical behavioral therapy ("DBT"), which he described as "one of the most well studied treatments for borderline personality" that "teaches and strengthens interpersonal skills and emotional regulation," as well as also to see a psychiatrist who specializes in the treatment of depression and anxiety to assist with her mood stability and panic attacks, there is no indication that plaintiff followed either of these recommendations. AT 410. Dr. Knoll's assessment is notably dated April of 2017, and plaintiff does not indicate

any lack of health insurance until after October of 2018.  AT 385, 1123-24.

In further support of her findings, the ALJ pointed to the plaintiff's own reported activities of daily living, which included an ability to perform household chores, shopping, caring for her child, engaging in hobbies such as knitting, and going to a casino and volunteering at the American Legion each at least once per week.  AT 637.  I note that the ALJ did not rely on these activities as proof that plaintiff can perform work on a full-time, consistent basis – although she did also note that plaintiff had indeed been sustaining employment at the level of substantial gainful activity, working eight-hour days, since late 2019, and that plaintiff's assertions that she had issues performing that job were unsupported by any objective evidence and inconsistent with reports made to her medical providers regarding that work activity – but rather found that such activities were inconsistent with the level of restriction opined by Dr. Ryan.  *See Donna N. v. Comm'r of Soc. Sec.*, 21-CV-1264, 2023 WL 2742076, at *11 (N.D.N.Y. Mar. 31, 2023) (McAvoy, J.) (accepting the Commissioner's argument that the ALJ's reliance on activities of daily living was proper because the ALJ used them as evidence that plaintiff was not as severely limited as opined by one of the physicians).  Because the ALJ did not materially misrepresent those activities, I find no error in the ALJ's consideration of them when

determining whether Dr. Ryan's opinions are consistent with the record as a whole.

Because the ALJ explained the reasons why she found Dr. Ryan's opinions to be unsupported by her own treatment records and explanations, and inconsistent with the other evidence in the record, I find that the ALJ did not err in concluding that such opinions are unpersuasive.

### 2.    Dr. Koocher

At the February 2021 hearing, Dr. Koocher, a non-examining consultative medical expert, was called to testify regarding whether any of plaintiff's mental impairments meet or equal a relevant listed impairment. Dr. Koocher opined that, in his opinion, plaintiff meets listing 12.08 in particular, noting that "she has a terrible time conforming and getting along with people," in addition to her panic disorder.  AT 668.  He opined that she appears to be only mildly impaired in her ability to understand, remember and apply information and mild-to-moderately impaired in her abilities related to concentration, persistence and pace, but would have marked restrictions in her abilities to interact with others, manage her behavior, and adapt.  AT 666.  Dr. Koocher specifically opined that plaintiff's documented limitations are not consistent with working full-time.  AT 666-67.

The ALJ found the level of limitation identified by Dr. Koocher to be

"inconsistent with much of the record" for the same reasons discussed above related to Dr. Ryan's opinion within the section related to the ALJ's finding as to whether plaintiff meets or equals a listed impairment, including that it is inconsistent with much of the evidence in the record, such as the medical evidence, her reports of daily activities, her ability to work beginning in 2019, and the opinions of the consultative examiner and the state agency nonexamining consultant.  AT 629-31.

I find that the ALJ's conclusion that Dr. Koocher's opinion is not persuasive is supported by substantial evidence.  As was implicitly acknowledged by the ALJ, the opinion appears to apply solely to the determination of whether plaintiff's mental health conditions meet or equal a listed impairment, and he did not otherwise offer an opinion regarding plaintiff's actual functional abilities.  AT 665-68.  The ALJ also notes that Dr. Koocher appears to have based his opinion heavily on the April 2017 assessment by Dr. Knoll and Dr. Ryan's July 2018 narrative report, both of which the ALJ also found to be unpersuasive.  AT 629.

In her decision, ALJ Greisler explained why she found the evidence in the record does not support the level of restriction opined by Dr. Koocher, relying on many of the same reasons that she provided related to Dr. Ryan's opinion that were discussed above, including inconsistency with the

other evidence such as Dr. Shapiro's opinion, and with plaintiff's reported
activities of daily living.  I find that those explanations support the
persuasiveness finding regarding Dr. Koocher's opinion just as they do the
findings regarding Dr. Ryan's opinions, and will not reiterate that analysis in
this section.  In highlighting Dr. Koocher's heavy reliance on Dr. Knoll's
assessment, the ALJ addressed, albeit somewhat implicitly, the fact that it
is not clear how Dr. Koocher balanced that assessment, which was based
upon a one-day examination conducted by Dr. Knoll in April 2017, with the
remainder of the evidence in the record.  Indeed, in questioning Dr.
Koocher, the ALJ attempted to test the basis for his opinion in order to
determine whether it represented a reliable assessment of the record as a
whole.  Notable in Dr. Koocher's testimony is the fact that he assumed that
plaintiff was capable of being employed at the time of the hearing only due
to conditions created by the COVID-19 pandemic, but had to be corrected
that plaintiff in fact began working months prior to the pandemic.  AT 665.
He also expressed amazement that plaintiff had been able to maintain that
recent employment in terms of interacting with others because of
indications of past issues dealing with authority figures contained in Dr.
Knoll's assessment, but did not explain how the fact of her employment did
or did not alter his assessment of plaintiff's capabilities.  *Id.*  The ALJ also

specifically questioned Dr. Koocher regarding how he considered the fact

that plaintiff has not undergone any specialized mental health treatment

since 2018, but in response Dr. Koocher merely acknowledged that there

were few records from that later time and reemphasized his reliance on the

difficulties she experienced in her past employment as documented in Dr.

Knoll's assessment.  AT 667-68.  Based on the explanations provided by

Dr. Koocher – which led the ALJ to conclude that his opinion was based

"heavily" on Dr. Knoll's assessment rather than the record as a whole – and

the analysis of the ALJ's other reasons for finding that opinion to be

inconsistent with the record as a whole, I cannot say the ALJ was

unreasonable in finding Dr. Koocher's opinion that plaintiff has various

marked limitations such that she meets Listing 12.08 is unpersuasive.

## IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the

plaintiff in support of her challenge to the Commissioner's determination, I

recommend a finding that the determination resulted from the application of

proper legal principles and is supported by substantial evidence.

Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED,

defendant's motion for judgment on the pleadings (Dkt. No. 14) be

GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be

DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days

within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT

TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE

APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:   July 25, 2023
          Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge